**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| LESTER B. ALLEN, | ) | CASE NO. 3:22-CV-02301-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE |
| v. | ) | JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OF OPINION & |
| | ) | ORDER |
| Defendant, | ) | |
| | ) | |

**I. Introduction**

Plaintiff, Lester B. Allen ("Allen" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 11). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On July 8, 2020, Claimant filed an application for SSI, alleging a disability onset date of April 1, 2018. (ECF No. 9 at PageID #: 52). The application was denied initially and upon reconsideration, and Allen requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On June 23, 2021, an ALJ held a hearing, during which Allen, represented by counsel, and an impartial vocational expert testified. (*Id.*). On November 8, 2021, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 52-64). The ALJ's decision

became final on October 19, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 39-41).

On December 21, 2022, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 12, 14, 15). Claimant asserts the following assignment of error:

> (1) The ALJ's mental RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion of consultative examiner Carolyn Arnold, Psy.D.

(ECF No. 12 at 1).

### III. Background

#### A. Relevant Hearing Testimony[1]

The ALJ summarized the relevant testimony from Claimant's hearing:

Regarding mental health impairments, the claimant said that he has problems with his temper as he is very short fused, and he can be very angry when he loses his temper. He stated that he lashes out both verbally and physically. The claimant testified that he has had several suicide attempts. He is not currently in counseling or taking medication, stating that he has a bad habit of self-sabotage as he gave up on both counseling and his doctor around January or February 2021. He said that he goes through periods where he does not want to do anything. The claimant further testified that he found out that he had cancer for which he did not start treatment since he did not want to live, so he figured he would let the cancer take its course.

(ECF No. 9 at PageID #: 58).

#### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

The claimant presented to an emergency room in October 2018, prior to the protective filing date, due to several days of abdominal pain, nausea, and vomiting. (8F/10). A CT of the abdomen revealed a large mass in the right kidney that was most likely renal cell carcinoma. (8F/13). He was given medication for

---

[1] Because Claimant does not challenge the ALJ's decision concerning his physical impairments, the Court only sets forth the testimony relevant to Claimant's mental impairments.

2

his abdominal symptoms/gastritis, and he was provided a referral to a physician and a local cancer center for the renal mass.

Approximately a year later, in October 2019, the claimant presented to an emergency room in due to suicidal thoughts with a plan. (1F/4). He said that recent health diagnoses had worsened his depression and that he was not taking any mental health medication. (Id.). The mental status examination said that the claimant had anxious and depressed mood with flat affect. (1F/6). His memory, attention, perception, and cognition were normal, and judgment was inappropriate. (Id.). The claimant was stabilized and transferred to a mental health center for admission. (1F/8-9).

The claimant saw a licensed professional clinical counselor in April 2020 via telehealth to establish mental health counseling. (4F/5-9). He reported suicidal ideation as he said he was diagnosed with cancer but was unsure if he wanted treatment or let it take its course since he was unsure if he wanted to live. The therapist recommended that he attend counseling once or twice per week. (Id.). The claimant was not taking any mental health medication, but he continued to attend counseling sessions. (4F; 6F). Mental status exams varied as there were times when he was described as having depressed and/or anxious mood with appropriate, blunted, or constricted affect. Other times he presented with euthymic mood. He was described as interactive during the sessions with only one occasion stating that he was withdrawn. The claimant was consistently alert and oriented; interactive; and his functional status was generally intact. In general, the claimant had up and down moods. (Id.). In August 2020, he said that smoking a little marijuana before going to bed did "a world of good for his mood." (4F/21). The therapist stated the claimant was in euthymic mood, but she told him that he should be taking prescribed medication for his mental health impairments. (Id.). Around October 2020, it was noted that the claimant saw a psychiatrist who prescribed medication for which the claimant reported that he saw improvement with racing thoughts as they slowed down. (4F/54). His therapist stated in November 2020 that the claimant was "making progress as evidenced by compliance with medication." (6F/11). The claimant said that he had some frustration with his psychiatrist, but he admitted that he needed to continue taking medication as he "knows he cannot get better if he does not." (6F/10). However, at a January 2021 therapy session, the claimant reported that he stopped taking his medication. (6F/7). The claimant also stopped going to therapy after this encounter. (6F; Hearing Transcript).

The claimant established care with a primary care physician in June 2020. (9F/7). He explained that he was diagnosed with renal cell carcinoma about a year and a half ago for which he had no treatment. He said that he lost about 20 to 25 pounds during the previous two months as he has not been eating well and he had multiple gastrointestinal symptoms such as nausea and diarrhea. The claimant also reported trouble breathing when he is cutting grass. He reported that he has been smoking about a half a pack of cigarettes per day since age 14 and he

3

smokes marijuana as well. The claimant said that he was taking no medication for mental health impairments, but he had a psychiatry appointment set up at a mental health clinic. (Id.). Examination stated the claimant was alert and oriented, and he was capable of taking commands. (9F/8-9). The claimant had normal respiratory effort with no signs of difficulty breathing. He had normal range of motion of the neck. (Id.). The claimant was prescribed an albuterol inhaler for his chronic obstructive pulmonary disease (COPD). (9F/9). Multiple tests laboratory tests were ordered as well as an x-ray for the claimant's reported kidney cancer diagnosis. He was advised to return in two weeks, but there was no evidence that the claimant returned to this medical provider. (Id.).

(ECF No. 9 at PageID #: 59-60).

### C. Opinion Evidence at Issue

The ALJ's treatment of an opinion authored by Dr. Carolyn Arnold is at issue. The ALJ summarized Arnold's opinion:

> A psychological consultative examination was performed on September 7, 2021, via video, by Carolyn Arnold, Psy.D. (10F). The claimant reported that he was not taking any mental health medication at the time of the evaluation, but he was currently smoking marijuana. (10F/6-7). He reported ongoing suicidal ideations with no intent to follow through because his terminal illness would "kill him soon anyway." Dr. Arnold opined that the claimant had marked limitations with his ability to make judgments on simple and complex work-related decisions; interacting with the public, coworkers, and supervisors; and responding to usual work situations and changes in work routine. (10F/2-3). She cited to the claimant's self-reports of explosive anger, self-isolation, being overwhelmed, difficulty coping, homelessness, and having no family support as reasons for her opinions. (Id.)

(ECF No. 9 at PageID #: 60).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since July 8, 2020, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: post-traumatic stress disorder (PTSD) depressive/bipolar disorder; and history of renal cell carcinoma, right kidney. (20 CFR 416.920(c)).

4

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: Environmental limitation to avoid more than occasional concentrated exposure to irritants such as fumes, odors, dust, and gases. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work-related decisions, with few, if any, workplace changes.

5. The claimant has no past relevant work (20 CFR 416.965).

. . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 8, 2020, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 9 at PageID #: 54-55, 57-58, 62, 64).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

However, even when there is substantial evidence, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Similarly, an ALJ's decision cannot be upheld, "even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not,

6

whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises a single issue on appeal, arguing that "the ALJ's mental RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion of consultative examiner Dr. Arnold in accordance with the regulations and caselaw." (ECF No. 12 at 9-10). Claimant asserts that because "[i]nterviews are clearly an acceptable diagnostic technique in the area of mental impairments," "it was improper for the ALJ to reject Dr. Arnold's opinion because she also relied on Plaintiff's subjective reports when formulating her opinion." (*Id.* at 11 (citing *McFarland v. Comm'r of Soc. Sec.*, 1:21-CV-01225-DAR, 2022 WL 3947134, at *14 (N.D. Ohio Aug. 2, 2022))). Claimant further argues that "Dr. Arnold did not solely base her opinion on Plaintiff's subjective reports" but rather "conducted a mental examination" and performed objective testing that supports her opinion. (ECF No. 12 at 11-13).

7

Claimant also argues that the ALJ's finding that Dr. Arnold's opinion was inconsistent with Claimant's daily activities mischaracterized the evidence. (*Id.* at 13-15).

The Commissioner responds that "there is a difference between a mental health professional (1) noting their observations of the claimant in treatment and (2) regurgitating a patient's claims" and the ALJ here "discounted Dr. Arnold's opinion for repeating Claimant's statements." (ECF No. 14 at 3 (citing *Lockhart v. Colvin*, No. 5:14-CV-00852, 2015 WL 1505767, at *6 (N.D. Ohio Apr. 1, 2015))). The Commissioner argues that Arnold's examination of Claimant does not save her opinion because she "did not include or reference her own observations and findings in the opinion" and "[j]ust because Claimant said something to a doctor during an interview does not mean it is not a subjective complaint." (*Id.* at 4-5). The Commissioner argues that *McFarland* is distinguishable from the situation here because the ALJ in *McFarland* wholly failed to address consistency while the ALJ here did evaluate the consistency of Arnold's opinion. (*Id.* at 5-6). Finally, the Commissioner argues that the record as a whole supports the ALJ's treatment of Arnold's opinion. (*Id.* at 7).

Claimant replies that "a physician's opinion can only be properly rejected if it is based *solely* on a claimant's self-reports" and Dr. Arnold's opinion was based on a mental examination and objective testing rather than just Claimant's reports. (ECF No. 15 at 1-2). Claimant asserts that while "an ALJ may consider activities of daily living when evaluating opinion evidence," the ALJ's findings cannot be "based in part on a mischaracterization of the evidence relating to [a claimant's] daily activities." (*Id.* at 4 (citing *McCormick v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-2510, 2022 WL 465433, at *23 (N.D. Ohio Jan. 27, 2022), *report & recommendation adopted sub nom.* 2022 WL 462936 (N.D. Ohio Feb. 15, 2022))).

8

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in § 416.920c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 416.920c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 416.920c(b)(2). Additionally, the decision must still build an accurate and logical bridge between the evidence and the conclusion. *Fleischer*, 774 F. Supp. 2d at 877.

After summarizing Dr. Arnold's opinion, the ALJ provided the following analysis:

> Dr. Arnold's opinion was not persuasive as it was apparent from her report that she relied heavily on the claimant's subjective statements to form her opinion, and the opinion was not consistent with the overall evidence. Regarding the psychologist's opinion that the claimant had a marked limitation interacting with others, it was noted several times that the claimant had various friends who he was able to stay at their houses/property, give him rides, and to help him out. (4F; 6F; Hearing Transcript). The medical evidence also reported that he interacted with family occasionally such as stating in January 2021 that he was busy spending time with his mother. (6F/7). The claimant also saw his son and grandson on occasion. (4F; 6F). He testified that he was able to go to the store for necessities, and he did not report problems while doing so. (Hearing Transcript). Multiple examinations stated the claimant was cooperative and interactive. (4F; 6F; 7F; 8F; 11F). In fact, Dr. Arnold stated he was cooperative during the psychological consultative examination. (10F/7). Additionally, the opinion that the claimant had marked limitation with making simple to complex work-related decisions or changes was not consistent with Dr. Arnold's report or the overall

9

> record. Dr. Arnold noted that the claimant had "somewhat intact" abstract thinking and his judgment and insight were "realistic." (10F/7). She said he could sustain concentration and show persistence even when "thinking, reviewing, dwelling on the past." (10F/8). To account for any difficulties making work-related decisions or adapting to changes, the undersigned limited the claimant to few, if any, workplace changes as well as limitation to simple, routine, and repetitive tasks without fast paced production requirements and only work-related decisions.

(ECF No. 9 at PageID#: 60-61).

As an initial matter, the Court concludes that the ALJ did address the supportability and consistency factors. Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c). The ALJ addressed supportability when he found that Arnold's opinion concerning Claimant's ability to interact with others was not supported by her own indication that he was cooperative during the examination, and her finding of marked limitation in Claimant's ability to make judgments on work-related decisions and adapt to changes was not supported by Arnold's own observations that Claimant had "somewhat intact" abstract thinking, showed reasonable judgment, and could sustain concentration. (*See* ECF No. 9 at PageID #: 529-30). As to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c). The ALJ addressed this factor when he found that Arnold's opinion was not consistent with the overall evidence because "claimant had various friends who he was able to stay at their houses/property, give him rides, and to help him out;" "he interacted with family occasionally such as stating in January 2021 that he was busy spending time with his

10

mother" and "saw his son and grandson on occasion;" "he was able to go to the store for necessities, and he did not report problems while doing so;" and "[m]ultiple examinations stated the claimant was cooperative and interactive." (ECF No. 9 at PageID #: 60). Thus, the ALJ addressed both supportability and consistency.

However, the Court agrees with Claimant that the ALJ mischaracterized the evidence, specifically as to Claimant's ability to interact with others. For instance, while the ALJ cited Claimant's relationship with his son to support his ability to interact with others, the record indicates that this relationship was tumultuous and Claimant and his son went extended periods of time without contact. (*See* ECF No. 9 at PageID #: 376 (Claimant indicated he had not spoken to son for over a year after a falling out); *id.* at PageID #: 383 (Claimant did not want a relationship with his son); *id.* at PageID #: 402 (Claimant was excited about meeting his grandson but was "afraid he will mess things up with his son"); *id.* at PageID #: 410 (Claimant and his son were "talking and things [were] still going well"). The record the ALJ cited to support that Claimant "was busy spending time with his mother" also indicates that he stopped calling his mother because she had not been there to support him "throughout most of his life." (*Id.* at PageID #: 460). During the hearing, Claimant testified that he did not "associate with [his] family for the most part because of [his] anger and [his] mental problems." (*Id.* at PageID #: 80). The ALJ indicated Claimant had "various friends" based on the hearing transcript and medical records. (*Id.* at PageID #: 60). However, the cited medical records seem to only refer to a single friend and reveal that the most significant relationship Claimant felt he had was with his cat. (*See id.* at PageID #: 376-77, 381, 396, 398). The hearing testimony did not contain any mention of Claimant's friendships. (*Id.* at PageID #: 72-82). While the ALJ also cited Claimant's hearing testimony to support that he could go to the store without difficulty, the only discussion of such

11

was in response to the ALJ's question as to whether Claimant participated "in any organized social activities like clubs, lodges, or religious activities," to which Claimant responded "No. I stay to myself. The only time I go out in public is to go to a store if I have to go." (*Id.* at PageID #:76).

Nothing in the ALJ's decision indicates that he considered the struggles within Claimant's relationships and Claimant's self-isolation, which are certainly relevant to the Claimant's ability to interact with others, in finding Arnold's opinion unpersuasive. The Court recognizes that an "ALJ need not cite every piece of evidence in the record and 'an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 819 (6th Cir. 2020) (citations omitted). However, "[i]f relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked." *Propst v. Comm'r of Soc. Sec.*, No. 5:20-cv-01755, 2022 WL 657481, at *2 (N.D. Ohio Mar. 3, 2022). Further, "[t]he presence of contrary evidence that the ALJ omitted means that the ALJ did not build an accurate, logical bridge between the evidence and the RFC." *Id.* (citing *Fleischer*, 774 F. Supp. 2d at 877). Here, because the ALJ's decision does not indicate that he considered all of the evidence concerning the nature of Claimant's relationships, the ALJ failed to build a logical bridge between the evidence and his decision. *Id.*

Accordingly, the ALJ's decision does not allow for an adequate review by this Court, and this matter should be remanded. *See Wylds v. Comm'r of Soc. Sec.*, No. 3:21-CV-00365-JGC, 2022 WL 1541928, at *10 (N.D. Ohio Mar. 2, 2022) ("Because the ALJ's opinion does not permit the Court to follow the 'reasoning and treatment of' opinion evidence in the record, the Commissioner's decision must be vacated and remanded for further proceedings."), *report & recommendation adopted*, 2022 WL 1539266 (N.D. Ohio May 16, 2022).

### VI. Conclusion

Based on the foregoing, the Court REVERSES the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: January 5, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE
